**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER SIRMONS, JR.,** | : | |
| **Plaintiff** | : | **No. 1:25-cv-00510** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **DEPARTMENT OF CORRECTIONS** | : | |
| **ADMINISTRATION,** | : | |
| **et al.,** | : | |
| **Defendants** | : | |
| | : | |
| **CHRISTOPHER SIRMONS, JR.,** | : | |
| **Plaintiff** | : | **No. 1:25-cv-00804** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **SCI CAMP HILL, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Currently before the Court are two (2) applications for leave to proceed in forma pauperis and two (2) complaints in which pro se Plaintiff Christopher Sirmons, Jr. ("Sirmons"), a convicted and sentenced state prisoner, alleges that he is unlawfully incarcerated beyond his maximum sentence date.  For the reasons stated below, the Court will grant the in forma pauperis applications and dismiss the complaints.  Sirmons will not be permitted to file amended complaints, and the Clerk of Court will be directed to close these cases.

**I.     BACKGROUND**

In 2013, a jury sitting in the Court of Common Pleas of Berks County convicted Sirmons of possession with intent to deliver a controlled substance, possession of a controlled substance, and possession of drug paraphernalia, after which the trial court sentenced him to a period of state incarceration for a minimum of four (4) years to a maximum of ten (10) years.  See Commonwealth v. Sirmons, Jr., No. CP-06-CR-0005197-2012 (Berks County Ct. Com. Pl. filed

Nov. 5, 2012); <u>Commonwealth v. Sirmons</u>, No. 1832 MDA 2018, 2019 WL 1384524, at *1 (Pa.

Super. Ct. Mar. 27, 2019); <u>Commonwealth v. Sirmons</u>, No. 379 MDA 2018, 2018 WL 4270149,

at *1 (Pa. Super. Ct. Sept. 7, 2018) (citation omitted).[1]  In late 2015, a jury sitting in the Court of

Common Pleas of Centre County found Sirmons guilty of two (2) counts of aggravated assault

and two (2) counts of simple assault, after which the trial court sentenced him to an aggregate

sentence of incarceration for a minimum of four (4) years to a maximum of eight (8) years.  <u>See</u>

<u>Commonwealth v. Sirmons, Jr.</u>, No. CP-14-CR-0001770-2014 (Centre County Ct. Com. Pl. <u>filed</u>

Oct. 9, 2014); <u>Sirmons v. Pa. Att'y Gen.</u>, No. 1:17-cv-01776, 2017 WL 6206288, at *1 (M.D. Pa.

Dec. 8, 2017).  Importantly, the Centre County trial judge ordered that this sentence was to run

"<u>consecutive</u> to the sentence Sirmons was already serving."  <u>See</u> <u>Sirmons</u>, 2017 WL 6206288, at

*1 (emphasis added) (citing docket sheet).  Sirmons is currently incarcerated at Pennsylvania

State Correctional Institution Camp Hill ("SCI Camp Hill").

 In November 2024, approximately nine (9) years after the imposition of his Centre

County sentence, Sirmons filed a complaint under 42 U.S.C. § 1983 in which he claimed that he

was being held at SCI Camp Hill beyond the expiration of his maximum sentence.  <u>See</u> <u>Sirmons,</u>

<u>Jr. v. SCI Camp Hill, et al.</u>, No. 1:24-cv-01971 (M.D. Pa. <u>filed</u> Nov. 15, 2024) ("<u>Sirmons I</u>"),

ECF No. 1.[2]  However, when he filed this civil action, he failed to remit the filing fee or seek

leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u>; as such, an Administrative Order issued requiring him to

---

[1]  The docket sheets for Sirmons's criminal cases are available on the Unified Judicial System of
Pennsylvania Web Portal, https://ujsportal.pacourts.us/CaseSearch (last visited May 27, 2025).
The docket is a public record of which this Court can take judicial notice.  <u>See</u> <u>Orabi v. Att'y</u>
<u>Gen.</u>, 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of
the contents of another [c]ourt's docket"); <u>Wilson v. McVey</u>, 579 F. Supp. 2d 685, 688 n.5 (M.D.
Pa. 2008) (taking judicial notice of court docket).

[2]  Despite this submission serving as Sirmons's initial complaint, he titled it as an amended
complaint.  <u>See</u> <u>id.</u>, ECF No. 1 at 1.

either remit the fee or file an application for leave to proceed in forma pauperis within thirty (30) days of the date of the Order. See id., ECF No. 2. Sirmons failed to comply with the Administrative Order, and, on December 18, 2024, an Order issued dismissing the case without prejudice and directing the Clerk of Court to close the case. See id., ECF No. 4.

On January 13, 2025, Sirmons filed an amended complaint, an application for leave to proceed in forma pauperis, and a prisoner trust fund account statement in Sirmons I. See id., ECF Nos. 5–7. Then, on March 20, 2025, Sirmons filed another complaint, application for leave to proceed in forma pauperis, and uncertified prisoner trust fund account statement, all of which were docketed at Civil Action No. 1:25-cv-00510. See Sirmons, Jr. v. Dep't of Corrs. Admin., SCI Camp Hill, et al., No. 1:25-cv-00510 (M.D. Pa. filed Mar. 20, 2025) ("Sirmons II"), Doc. Nos. 1–3. Because Sirmons's prisoner trust fund account statement was not certified in accordance with 28 U.S.C. § 1915(a)(2), an Administrative Order issued requiring the Superintendent at SCI Camp Hill to submit a certified account statement to the Clerk of Court within fifteen (15) days of the date of the Order.[3] See id., Doc. No. 5. The Clerk of Court docketed Sirmons's certified account statement on March 27, 2025. See id., Doc. No. 6.

As for Sirmons's submissions filed in Sirmons I after the Clerk of Court closed that case, this Court entered an Order on May 6, 2025, directing the Clerk of Court to open a new civil action and docket the amended complaint, application for leave to proceed in forma pauperis, and prisoner trust fund account statement therein. See Sirmons I, ECF No. 8. On the same date, the Clerk of Court opened Civil Action No. 1:25-cv-00804 and docketed the aforementioned

---

[3] Section 1915(a)(2) requires prisoners bringing civil actions without prepaying the fees to "submit a certified copy of the[ir] trust fund account statement (or institutional equivalent) . . . for the 6-month period immediately preceding the filing of the complaint . . ., obtained from the appropriate official of each prison at which [they are or were] confined." See 28 U.S.C. § 1915(a)(2).

documents therein.  See Sirmons, Jr. v. SCI Camp Hill, et al., No. 1:25-cv-00804 (M.D. Pa. filed

May 6, 2025) ("Sirmons III"), Doc. Nos. 1–3.

Sirmons's allegations and legal claims in his complaints in the above-captioned cases are

substantially similar.  In both complaints, Sirmons names as Defendants: (1) Commonwealth of

Pennsylvania Department of Corrections ("DOC") Administration ("DOC Admin."); (2) SCI

Camp Hill;[4] (3) S. Imler ("Imler"), a Unit Counselor at SCI Camp Hill; (4) Davidson, a Unit

Manager at SCI Camp Hill; (5) Kendell, a "Correctional Deputy" at SCI Camp Hill; (6) Michael

Gourley ("Gourley"), the Superintendent at SCI Camp Hill; (7) D. Varner ("Varner"), the Chief

Grievance Officer for the Commonwealth of Pennsylvania Department of Corrections ("DOC");

and (8) Desiree Patterson ("Patterson"), a DOC Records Supervisor.  See (Sirmons II, Doc. No. 1

¶¶ 4–9; Sirmons III, Doc. No. 1 ¶¶ 4–9).  However, in Sirmons III, Sirmons also names as

Defendant Lara Best ("Best"), another DOC Records Supervisor.  See (Sirmons III, Doc. No. 1 ¶

10).  All Defendants are sued in their official and individual capacities under 42 U.S.C. § 1983.

See (Sirmons II, Doc. No. 1 ¶ 10; Sirmons III, Doc. No. 1 ¶ 11).

In both complaints, Sirmons alleges that he had an "annual review" with Imler during the

afternoon of May 23, 2024.  See (Sirmons II, Doc. No. 1 ¶ 11; Sirmons III, Doc. No. 1 ¶ 12).

During this review, Sirmons asserted that his criminal sentence was "[a]ltered and [i]ncorrect."

See (Sirmons II, Doc. No. 1 ¶ 11; Sirmons III, Doc. No. 1 ¶ 12).  Imler disagreed with him,

informing him that there was "nothing wrong with it" and "nothing she could do about it."  See

(Sirmons II, Doc. No. 1 ¶ 12; Sirmons III, Doc. No. 1 ¶ 13).  Sirmons then placed "the Centre

County PA court order" on Imler's desk and asked Imler to read it.  See (Sirmons II, Doc. No. 1

---

[4]  Sirmons lists DOC Admin. and SCI Camp Hill in the captions but not in the bodies of his
complaints.  See (Sirmons II, Doc. No. 1 at 1–2; Sirmons III, Doc. No. 1 at 1–2).

¶ 12; <u>Sirmons III</u>, Doc. No. 1 ¶ 13).  Imler did not read the order, which Sirmons apparently interpreted as Imler not believing that he had an altered or incorrect sentence.  <u>See</u> (<u>Sirmons II</u>, Doc. No. 1 ¶ 13; <u>Sirmons III</u>, Doc. No. 1 ¶ 14).  At that point, Sirmons's "annual review" concluded.  <u>See</u> (<u>Sirmons II</u>, Doc. No. 1 ¶ 13; <u>Sirmons III</u>, Doc. No. 1 ¶ 14).

Approximately thirty (30) minutes later, Sirmons was called to the Unit Manager's Office where he met with Davidson.  <u>See</u> (<u>Sirmons II</u>, Doc. No. 1 ¶ 14; <u>Sirmons III</u>, Doc. No. 1 ¶ 15).  Sirmons told Davidson that he had an altered and incorrect sentence and provided Davidson with the "Centre County Court Order" he previously showed Imler.  <u>See</u> (<u>Sirmons II</u>, Doc. No. 1 ¶¶ 14–15; <u>Sirmons III</u>, Doc. No. 1 ¶¶ 15–16).  In response, Davidson informed Sirmons that she already spoke with Imler about his sentence, that there was nothing wrong with his sentence, and that Sirmons should contact the Centre County Courthouse if he believed there was something wrong with his sentence.  <u>See</u> (<u>Sirmons II</u>, Doc. No. 1 ¶ 15; <u>Sirmons III</u>, Doc. No. 1 ¶ 16).

Thereafter, Sirmons "got help from several inmates regarding the issue," and they helped him file a grievance in which he complained that he was being deprived of his liberty due to his continued incarceration.  <u>See</u> (<u>Sirmons II</u>, Doc. No. 1 ¶ 16; <u>Sirmons III</u>, Doc. No. 1 ¶ 17).  Sirmons asserted in the grievance that he received a sentence of four (4) to eight (8) years in Centre County, which should have run from his December 17, 2015 sentencing date to December 17, 2023.  <u>See</u> (<u>Sirmons II</u>, Doc. No. 1 ¶ 16; <u>Sirmons III</u>, Doc. No. 1 ¶ 17).  Therefore, Sirmons had already reached his maximum sentence date and yet was "still being held under a non-criminal prosecution sentence of [eight (8) to eighteen (18)] years," which lacked a "criminal case dockit [sic] number to be . . . verif[ied]."  <u>See</u> (<u>Sirmons II</u>, Doc. No. 1 ¶ 17; <u>Sirmons III</u>, Doc. No. 1 ¶ 18).  Sirmons does not know in which county he received this sentence or why it is in the DOC's database.  <u>See</u> (<u>Sirmons II</u>, Doc. No. 1 ¶ 17; <u>Sirmons III</u>, Doc. No. 1 ¶ 18).

Sirmons' grievance was denied, and the denial was upheld after he appealed to SCI Camp Hill's facility manager and ultimately to the DOC's Central Office.  See (Sirmons II, Doc. No. 1 ¶¶ 18–20; Sirmons III, Doc. No. 1 ¶¶ 19–21).  Then, on August 22, 2024, Sirmons submitted a request slip to Kendell in which he explained "what should have been done do [sic] to [him] no longer haven [sic] a criminal prosecution sentence to serv [sic] in the [DOC]."  See (Sirmons II, Doc. No. 1 ¶ 20; Sirmons III, Doc. No. 1 ¶ 21).[5]  Although it is unclear whether Sirmons also mentioned this in his request slip, he asserts in his complaints that his Centre County sentence was not "within the normal limits or range which the conviction has authorized the state to impose."  See (Sirmons II, Doc. No. 1 ¶ 24; Sirmons III, Doc. No. 1 ¶ 25).

Sirmons alleges that he has received "state parole reviews" but claims those reviews show that his Centre County sentence had a maximum sentence date of December 17, 2023.  See (Sirmons II, Doc. No. 1 ¶ 25; Sirmons III, Doc. No. 1 ¶ 26).  Sirmons has also unsuccessfully tried to get SCI Camp Hill and the DOC to fix their computer records relating to his sentence for over a year.  See (Sirmons II, Doc. No. 1 ¶ 25; Sirmons III, Doc. No. 1 ¶ 26).  Due to his liberty allegedly being deprived due to his continued confinement, Sirmons asserts that he has been subjected to false imprisonment, cruel and unusual punishment, as well as gender and racial discrimination.  See (Sirmons II, Doc. No. 1 ¶ 26; Sirmons III, Doc. No. 1 ¶ 27).[6]  He has also experienced emotional distress, pain and suffering, suicidal thoughts, and the loss of contact with

---

[5]  In his complaint filed in Sirmons III, Sirmons alleges that he explained in the request slip that the court order in the Centre County case was to "be []ran consecutive[,] meaning to have(no) intervolement [sic] with another criminal prosecution of any cine [sic]."  See (Sirmons III, Doc. No. 1 ¶ 22).  As evident from this allegation, Sirmons either does not understand or is misconstruing the term "consecutive" in the sentencing context.

[6]  Sirmons asserts that he is being subjected to cruel and unusual punishment in his complaint filed in Sirmons II.  Additionally, Sirmons mentions being subjected to racial and gender discrimination in his complaint filed in Sirmons III.

his children.  See (Sirmons II, Doc. No. 1 ¶ 26; Sirmons III, Doc. No. 1 ¶ 27).  For relief,

Sirmons seeks, inter alia, (1) a declaration that Defendants violated his constitutional rights; (2)

nominal, compensatory, and punitive damages; (3) the termination and expungement of any

reference to him being sentenced to eight (8) to eighteen (18) years' incarceration; and (4) his

release from incarceration.  See (Sirmons II, Doc. No. 1 at 7; Sirmons III, Doc. No. 1 at 9).

## II.    LEGAL STANDARDS

### A.    Applications for Leave to Proceed in Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), the Court may allow a plaintiff to commence a civil case

"without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that

includes a statement of all assets such prisoner possesses that the person is unable to pay such

fees or give security therefor."[7]  See id.  This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal
> courts."  Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338
> (1989).  Specifically, Congress enacted the statute to ensure that administrative
> court costs and filing fees, both of which must be paid by everyone else who files
> a lawsuit, would not prevent indigent persons from pursuing meaningful litigation.
> [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, §
> 1915(a) allows a litigant to commence a civil or criminal action in federal court in
> forma pauperis by filing in good faith an affidavit stating, among other things, that
> [they are] unable to pay the costs of the lawsuit.  Neitzke, 490 U.S. at 324, 109 S.Ct.
> 1827.

See Douris, 293 F. App'x at 131–32 (footnote omitted).

A litigant can show that they are unable to pay the costs of the lawsuit "based on a

showing of indigence."  See Deutsch, 67 F.3d at 1084 n.5.  The Third Circuit Court of Appeals

has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely

---

[7]  While the Court recognizes that Sirmons is incarcerated, "[t]he reference to prisoners in §
1915(a)(1) appears to be a mistake.  In forma pauperis status is afforded to all indigent persons,
not just prisoners."  See Douris v. Middletown Twp., 293 F. App'x 130, 132 n.1 (3d Cir. 2008)
(unpublished).

destitute to enjoy the benefit of the statute.'"  See Mauro v. N.J. Supreme Ct. Case No. 56,900,

238 F. App'x 791, 793 (3d Cir. 2007) (unpublished) (quoting Adkins v. E.I. DuPont de Nemours

& Co., 335 U.S. 331, 339 (1948)).  Some district courts have explained that all a litigant needs to

show is that because of their poverty, they cannot afford to pay for the costs of the litigation and

provide themselves with the necessities of life.  See, e.g., Rewolinski v. Morgan, 896 F. Supp.

879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his

poverty, provide himself and any dependents with the necessities of life is sufficient."); Jones v.

State, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed in forma pauperis is

sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation

and still provide for him- or herself and any dependents.").

### B.    The Court's Screening of Complaints Under 28 U.S.C. §§ 1915A and 1915(e)(2)

Under 28 U.S.C. § 1915A, this Court must "review . . . a complaint in a civil action in

which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint is frivolous or fails to state a

claim upon which relief may be granted, the Court must dismiss the complaint.  See id. §

1915A(b)(1).  The Court has a similar screening obligation with respect to actions filed by

prisoners proceeding in forma pauperis.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss

the case at any time if the [C]ourt determines that . . . the action or appeal . . . is frivolous . . . [or]

fails to state a claim on which relief may be granted . . . .").

A complaint is frivolous under Sections 1915A(b)(1) and 1915(e)(2)(B)(i) if it "lacks an

arguable basis either in law or fact."  See Neitzke, 490 U.S. at 325.  In addition, when reviewing

whether a plaintiff has failed to state a claim upon which relief may be granted under Sections

1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when reviewing a complaint for possible dismissal pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2).  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when

presented with a pro se litigant, we have a special obligation to construe his complaint liberally"
(citation and internal quotation marks omitted)).  Therefore, a pro se complaint, "however
inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by
lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted)
(quoting Estelle, 429 U.S. at 106).  This means the court must "remain flexible, especially 'when
dealing with imprisoned pro se litigants . . . .'"  See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir.
2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).

      Additionally, when construing a pro se complaint, the court will "apply the relevant legal
principle even when the complaint has failed to name it."  See Mala, 704 F.3d at 244.  However,
pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to
all other litigants.'"  See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

### C.      Section 1983

      Section 1983 is the statutory vehicle by which private citizens may seek redress for
violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.
This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which
"to vindicate violations of federal law committed by state actors."  See Pappas v. City of
Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S.
273, 284–85 (2002)).  "To state a claim under § 1983, a plaintiff must allege the violation of a
right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

## III.    DISCUSSION

### A.    Sirmons's Applications for Leave to Proceed in Forma Pauperis

After reviewing the applications for leave to proceed in forma pauperis filed in Sirmons II and Sirmons III, as well as Sirmons's certified prison trust fund account statement, it appears that Sirmons is unable to pre-pay the costs of these civil rights actions. Therefore, the Court will grant the applications and allow him to proceed in forma pauperis in the above-captioned cases.[8]

### B.    Screening of the Complaints

#### 1.    Section 1983 Claims Against DOC Admin. and SCI Camp Hill

Sirmons has named DOC Admin. and SCI Camp Hill as Defendants; however, he fails to state plausible Section 1983 claims against them because they are entitled to Eleventh Amendment immunity and are not "persons" amenable to suit under Section 1983. Regarding the Eleventh Amendment of the United States Constitution, it provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." See U.S. Const. amend. XI. This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court. Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by

---

[8]  However, because Sirmons is a prisoner, he is advised that he will be obligated to pay the filing fees for both cases in installments in accordance with the Prison Litigation Reform Act ("PLRA"), regardless of the outcome of these actions. See 28 U.S.C. § 1915(b).

the Framers, the respect and dignity of the states and protects the ability of the states "to govern in accordance with the will of their citizens."

See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (quoting Alden v. Maine, 527 U.S. 706, 751 (1999)).

Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state." See Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). As such, the DOC, as an agency of the Commonwealth of Pennsylvania, is entitled to the Commonwealth's Eleventh Amendment immunity. See 71 P.S. § 61(a) ("The executive and administrative work of this Commonwealth shall be performed by the . . . Department of Corrections . . . ."); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 310 (3d Cir. 2020) (explaining that "state sovereign immunity prohibit[ed]" plaintiff's Section 1983 claims against the DOC). Moreover, DOC Admin. and SCI Camp Hill, as parts of the DOC, "share[] in the Commonwealth [of Pennsylvania's] Eleventh Amendment immunity." See Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000); Walters v. Camp Hill State Corr. Inst., No. 1:22-cv-01802, 2023 WL 35321, at *3 (M.D. Pa. Jan. 4, 2023) (dismissing pro se plaintiff's Section 1983 claims against SCI Camp Hill because, inter alia, it was entitled to Eleventh Amendment immunity).

The Court recognizes that "Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." See Pa. Fed'n of Sportsmen's Clubs, 297 F.3d at 323 (citation omitted). However, none of these exceptions apply in this case.

As for the first exception to Eleventh Amendment immunity, Congress did not intend to abrogate Eleventh Amendment immunity by enacting Section 1983. See Quern v. Jordan, 440

U.S. 332, 344–45 (1979) (stating that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States").  Concerning the second exception, the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity from suit in federal courts.  See 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); see also Lavia, 224 F.3d at 195 (explaining that Pennsylvania has not waived its Eleventh Amendment immunity).  For the final exception, SCI Camp Hill is not an individual state officer. Thus, none of the exceptions to Eleventh Amendment immunity apply here.

In addition, for Sirmons to state a plausible claim under Section 1983, he must allege that a "person" acting under the color of state law deprived him of his constitutional rights.  See Imbler v. Pachtman, 424 U.S. 409, 417 (1976) ("'[E]very person' who acts under color of state law to deprive another of a constitutional right [is] answerable to that person in a suit for damages." (citing 42 U.S.C. § 1983)).  However, an administrative department of a state, such as the DOC, is not considered a "person" for purposes of Section 1983 and, thus, is not amenable to suit under this statute.  See 71 P.S. § 61(a); see also Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (stating that a state agency may not be sued under Section 1983 because it is not a "person" for purposes of the statute); Foye v. Wexford Health Sources Inc., 675 F. App'x 210, 215 (3d Cir. 2017) (unpublished) (dismissed Section 1983 claims against the DOC and a DOC correctional institution because they were entitled to Eleventh Amendment and "are not persons subject to suit under" Section 1983).  Similarly, DOC Admin. and individual DOC correctional

institutions, such as SCI Camp Hill, "are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983."  See Pettaway v. SCI Albion, 487 F. App'x 766, 768 (3d Cir. 2012) (unpublished); Will v. Mich. Dep't of State Police, 491 U.S. 58, 65–66 (1989) (concluding that an individual may not sue a state agency in federal court under Section 1983 because a state agency is not a "person" under that statute).  Accordingly, Sirmons cannot maintain his Section 1983 claims against DOC Admin. and SCI Camp Hill, irrespective of the relief sought, and the Court will dismiss those claims.

       **2.**        **Request to be Released from Incarceration**

Among his requests for relief, Sirmons seeks an order releasing him from DOC custody. See (Sirmons II, Doc. No. 1 at 7; Sirmons III, Doc. No. 1 at 9).  "[W]hen a state prisoner is challenging the very fact or duration of [their] physical imprisonment, and the relief [they] seek[] is a determination that [they are] entitled to immediate release or a speedier release from that imprisonment, [their] sole federal remedy is a writ of habeas corpus."  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Jaffery v. Atl. County Prosecutor's Office, 695 F. App'x 38, 41–42 (3d Cir. 2017) (unpublished) ("[T]o the extent Jaffery seeks dismissal of the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus.").  Accordingly, this claim is dismissed without prejudice to Sirmons filing a habeas petition seeking this relief.[9]

---

[9]  The Court expresses no opinion on the viability of such a petition or whether Sirmons would first need permission from the Third Circuit Court of Appeals before filing it.

### 3.    Section 1983 Official-Capacity Claims for Monetary Damages Against Imler, Davidson, Kendell, Gourley, Varner, Patterson, and Best

Sirmons asserts Section 1983 official capacity claims for monetary damages against Imler, Davidson, Kendell, Gourley, Varner, Patterson, and Best. Sirmons may not maintain these Section 1983 official-capacity claims against these Defendants because they are entitled to Eleventh Amendment immunity. The Eleventh Amendment bars claims for monetary relief against state officials acting in their official capacities because such claims are essentially claims against the employing government agency. See Will, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); A.W. v. Jersey City Pub. Schs., 341 F.3d 234, 238 (3d Cir. 2003) (explaining that Eleventh Amendment immunity "extends to state agencies as well as state officials sued in their official capacities for monetary damages").[10] Therefore, the Court will dismiss Sirmons's Section 1983 official-capacity claims for monetary damages against Imler, Davidson, Kendell, Gourley, Varner, Patterson, and Best.

### 4.    Section 1983 Claims for Being Detained Beyond Maximum Release Date

By asserting that he has been held at SCI Camp Hill for over a year past his release date, Sirmons is claiming that Defendants violated his rights under the Eighth Amendment to the United States Constitution. The Eighth Amendment is "made applicable to the States through the Fourteenth Amendment" and "prohibits the infliction of 'cruel and unusual punishments.'"

---

[10] However, "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." See Hafer v. Melo, 502 U.S. 21, 31 (1991).

See Glossip v. Gross, 576 U.S. 863, 876 (2015). "An inmate's detention after [their] term of imprisonment can, under certain circumstances, constitute cruel and unusual punishment, in violation of the Eighth Amendment." Wharton v. Danberg, 854 F.3d 234, 241 (3d Cir. 2017) (citing Montanez v. Thompson, 603 F.3d 243, 250 (3d Cir. 2010)). Such imprisonment can violate the Eighth Amendment because "[c]ontinued incarceration beyond [a prisoner's maximum sentence] is clearly punitive, and in many cases will serve no penological justification at all." See id. (citing Sample v. Diecks, 885 F.2d 1099, 1108 (3d Cir. 1989)).

Nevertheless, "[t]he administration of a system of punishment entails an unavoidable risk of error[.]" See id. (citation and internal quotation marks omitted). In many instances, eliminating that "risk of error . . . would be either literally impossible or unfeasible because prohibitively costly." See Sample, 885 F.2d at 1108. As such, "[t]he Eighth Amendment does not, and could not, require the elimination of all such risk of error." See Wharton, 854 F.3d at 241; see also Sample, 885 F.2d at 1108 (explaining that "unforeseeable accidents or inadvertent mistakes[,]" which may occur during imprisonment, "are a necessary cost of any prison system" and, thus, "are not 'repugnant to the conscience of mankind'" (quoting Estelle v. Gamble, 429 U.S. 97, 105 (1976))).

For a plaintiff to plausibly plead an Eighth Amendment claim for "over-detention," they must plead sufficient facts to satisfy a "three-part test." See Wharton, 854 F.3d at 241. The plaintiff must allege facts showing that: (1) "a prison official had knowledge of the[ir] problem and thus of the risk that unwarranted punishment was being, or would be, inflicted"; (2) the prison official "either failed to act or took only ineffectual action under the circumstances, indicating that [their] response to the problem was a product of deliberate indifference to the [plaintiff's] plight"; and (3) "a causal connection between the [prison] official's response to the

16

problem and the unjustified detention." See Wharton, 854 F.3d at 241 (quoting Montanez, 603 F.3d at 252); see also Sample, 885 F.2d at 1110 (holding "that there can be no [E]ighth [A]mendment liability in this context in the absence of a showing of deliberate indifference on the part of the defendant [as] to whether the plaintiff suffer[ed] an unjustified deprivation of [their] liberty").

In this case, the Court need not examine whether Sirmons's allegations in his complaints satisfy the three-part test because the caselaw and publicly available records from his criminal cases show that he is not serving merely a four (4) to eight (8) year sentence. Instead, he is serving an aggregate sentence of incarceration for a minimum of eight (8) years to a maximum of eighteen (18) years based on the consecutive sentences imposed in Centre and Berks Counties. Although this Court must generally accept a plaintiff's factual allegations in their complaint as true, the Court need not do so if those allegations are contradicted by matters of public record of which the Court has taken judicial notice. See In re Washington Mut. Inc., 741 F. App'x 88, 91 n.3 (3d Cir. 2018) (unpublished) ("We need not . . . credit factual allegations contradicted by matters of which we may take judicial notice."); Sourovelis v. City of Phila., 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017) ("While Plaintiffs' well-pleaded allegations must be accepted as true for purposes of [resolving a motion to dismiss under Rule 12(b)(6)], the Court need not accept as true allegations that are directly contradicted by . . . matters of public record." (citations omitted)). Therefore, even though Sirmons alleges in his complaints that his maximum sentence concluded on December 17, 2023, the Court will not treat those allegations as true because they are contradicted by the dockets from his criminal cases in Centre and Berks Counties as well as the available caselaw referencing his sentences in those cases. In other words, his allegations relating to his sentence concluding on December 17, 2023, are factually frivolous. See, e.g.,

17

Mosley v. Ripley County Ind., No. 4:21-cv-00167, 2022 WL 3681814, at *8 n.4 (S.D. Ind. Aug. 25, 2022) (concluding that plaintiff's allegation that his sentence did not include a condition that he pay off his restitution to earn early release from probation, . . . [wa]s contradicted by judicially noticeable documents in the underlying criminal case and [wa]s factually frivolous"), aff'd sub nom. Mosley v. Ind. Dep't of Corr., No. 22-2722, 2024 WL 1651902 (7th Cir. Apr. 17, 2024).  Accordingly, the Court will dismiss Sirmons's Eighth Amendment over-detention claims with prejudice.

    **C.**    **Leave to Amend**

    Having determined that Sirmons's claims against Defendants are subject to dismissal, the Court must determine whether to grant him leave to file amended complaints.  Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment— irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile.").  "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  Based on the analysis above, it would be futile for Sirmons to file an amended complaint in the above-captioned cases.  Accordingly, the Court will not grant him leave to file amended complaints.

18

IV.    **CONCLUSION**

For the reasons discussed above, the Court will (1) grant Sirmons's applications to proceed in forma pauperis and dismiss his complaints in both cases, (2) decline to grant him leave to file amended complaints, and (3) direct the Clerk of Court to close the cases. An appropriate Order follows.[11]

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[11]  Sirmons has at least two (2) other civil rights actions which have been dismissed as legally frivolous and/or for the failure to state a claim. See Sirmons v. Berks County PA Police Dep't Admin., No. 24-cv-06871, 2025 WL 1004361 (E.D. Pa. Apr. 3, 2025) (dismissing Section 1983 claims under Section 1915(e)(2)(B)(ii) for failure to state a claim and as time-barred); Sirmons v. Pennsylvania, No. 14-cv-01273, 2014 WL 1302026 (E.D. Pa. Mar. 28, 2014) (dismissing Section 1983 claims under Section 1915(e)(2)(B)(i), (ii) as legally frivolous and for failure to state a claim). It would therefore appear that the dismissal of at least one of the instant cases constitutes a third dismissal for purposes of Section 1915(g). See 28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action . . . in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.").